UNIVERSAL FILM EXCHANGES, INC., a Delaware Corporation, Columbia Pictures Corporation, a New York Corporation, Metro-Goldwyn-Mayer, Inc., a Delaware Corporation, Paramount Film Distributing Corporation, a Delaware Corporation, 20th Century-Fox Film Corporation, a Delaware Corporation, and United Artists Corporation, a Delaware Corporation, Plaintiffs,

v.

CITY OF CHICAGO, a municipal corporation, James B. Conlisk, Superintendent of Police of the City of Chicago, John F. Cusack, Ner Littner, Henry Rago, Matthew Schoenbaum and Mrs. Norman Gerlach, Members of the Motion Picture Appeal Board of the City of Chicago, and Jennie Drakos, Ilene Frymire, Beatrice McGill, Eleanor Gross and Edith Joyce, Members of the Film Review Section, Office of Police of the City of Chicago, Defendants.

No. 68 C 722.

United States District Court
N. D. Illinois, E. D.
Aug. 20, 1968.

Samuel W. Block, Thomas P. Sullivan, John G. Stifler, Leah S. Hamilton, Raymond, Mayer, Jenner & Block, Chicago, Ill., for plaintiffs.

Marvin S. Aspen, for Raymond F. Simon, Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

NAPOLI, District Judge.

The City of Chicago has recently enacted a motion picture censorship ordinance, Chapter 155 of the Municipal Code of Chicago. The ordinance requires a permit for the exhibition of any motion picture in a public place in the city, to an audience which includes any person under 18 years of age. A permit is obtained by applying to the Superintendent of Police, tendering with the application the film to be shown, along with a permit fee amounting to three dollars for each thousand lineal feet of film or fraction thereof, and an additional fee of one dollar per thousand lineal feet or fraction thereof for duplicates of the original permit. The Superintendent of Police is directed to examine the film or to cause it to be inspected by the Film Review Section (a six member board created by the ordinance) within two days of receipt of the permit application. The Superintendent of Police is directed to refuse to issue a

permit "if the picture, considered as a whole, is obscene when viewed by children." The term "children" is defined to include any person less than eighteen years of age. It is the duty of the Superintendent of Police to "forthwith" either grant or deny a permit after inspection of the film.

In the event of rejection by the Film Review Section or by the Superintendent of Police, the Motion Picture Appeal Board (a separate body created by the ordinance, which is to consist of at least five persons "experienced or educated in one or more of the following fields: art, drama, literature, philosophy, sociology, psychology, history, music, science, or other related fields") must, within seven days of the rejection, meet to review the decision of the Superintendent of Police. The Board is directed to review the film in its entirety, and to consider whatever evidence the exhibitor or distributor may wish to present in support of the exhibition of the film. Within 3 days after the meeting, the Board must announce its ruling. In the event the Motion Picture Appeal Board affirms the Superintendent of Police in rejecting the film, the Board within three days from the hearing must file an action in the Circuit Court of Cook County, for an injunction against the showing of the film. The ordinance further provides that whenever the City of Chicago fails, within the time limits provided, to issue a permit, and the Motion Picture Appeal Board has not filed an action for an injunction, the motion picture may be exhibited without permit or fees, without violating Chapter 155.

On the day before the censorship ordinance became effective, the Chief Judge of the Circuit Court of Cook County issued General Order No. 3–3, which reads as follows:

IT IS HEREBY ORDERED that:

(a) any complaint for an injunction filed pursuant to Section 155–7.2 of the Municipal Code of Chicago, or similar provision of an Ordinance of any other municipality, shall be placed at the head of the call of the Chancery Division and shall be given priority over all other cases.

(b) The Court shall set the cause for hearing within five (5) days after the Complaint has been filed. The hearing shall not be recessed or continued, other than from the close of one court day to the opening of the next court day, unless upon request of the defendant.

(c) The Court shall render its judgment within three (3) days after the conclusion of the hearing.

Plaintiffs are seven motion picture distributors who seek a declaratory judgment that the Motion Picture Ordinance is unconstitutional. Plaintiffs also seek a permanent injunction against defendants City of Chicago; James B. Conlisk, Superintendent of Police, the chief executive charged with enforcement of the ordinance; and the members of the Film Review Board and the Motion Picture Appeal Board of the City of Chicago.

Defendants have "stipulated" to the jurisdiction of this Court to hear this matter, and have not discussed, in their briefs on the pending motion to dismiss, the question of whether or not this Court should invoke the doctrine of abstention, in order to allow the state court a chance to interpret certain provisions in the ordinance; or the question of whether or not this Court might properly and reasonably exercise the discretion always present in declaratory judgment actions, to decline the exercise of jurisdiction over any or all of the issues raised. An earlier complaint by these same plaintiffs, Columbia Pictures Corp. v. City of Chicago, D. C., 288 F. Supp. 284, was dismissed by this Court *sua sponte* for lack of jurisdiction over the subject matter, on April 12, 1968, despite defendants' apparent acquiescence to the Court's jurisdiction over the subject matter. For the reasons which follow, the Court holds that it has jurisdiction over the subject matter, but that jurisdiction should be exercised only to

determine some of the issues raised by the complaint; and that as to the issues decided today, plaintiffs are entitled to no relief.

■ Although the federal courts do not sit to render advisory opinions to legislative bodies, state or federal, notwithstanding the stipulations of counsel, where a party can show an actual injury to his own interests caused by the existence and threatened enforcement of an allegedly unconstitutional statute, he should be entitled to a determination from an Article III Court [1] as to whether or not the statute is constitutional. In the case at bar, plaintiffs have pleaded their inability to contract with various exhibitors in the city as to specific named films unless and until they comply with the very ordinance which they are now attacking as unconstitutional. The economic injury thus pleaded, when coupled with the claim that the ordinance is an impediment to plaintiffs' rights to disseminate their films freely through exhibitors, is barely sufficient to make the present controversy justiciable.

■ Plaintiffs at the outset challenge the entire concept of motion picture censorship. However, the Supreme Court has recently found that the evils inherent in public exhibition of obscene films are sufficiently great to justify prior administrative censorship of motion pictures. Times Film Corporation v. City of Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961). This Court feels bound by the *Times Film* case to rule that a requirement of prior submission of motion picture films to a censor in advance of exhibition is not per se unconstitutional.

■ The Supreme Court has insisted, however, that strict procedural safeguards, including judicial superintendence of the censor's action, be included in any censorship scheme. Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Thus, any censor must have the burden of proving that the film is expression unprotected by the First Amendment to the United States Constitution. Any restraint prior to judicial review must be limited to preservation of the status quo and for the shortest period compatible with judicial procedure. Finally, a prompt final judicial determination must be assured. Any delay which lends the effect of finality to the administrative refusal to issue a license renders the restraint invalid.

■ In their broadside attack on the new Chicago Motion Picture Ordinance, plaintiffs alternatively contend that the ordinance is impermissibly vague, and that it is replete with various procedural flaws. Since there is a heavy presumption against the validity of prior restraints of expression, cf. Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), each of plaintiff's objections deserves discussion.

■ 1. The previous Chicago censorship ordinance was struck down by the Supreme Court in Teitel Film Corp. v. Cusack, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968), on the grounds that the 50 to 57 day period for completing the administrative process before institution of judicial review did not satisfy the standard set down in Freedman v. State of Maryland, supra, that the censor must, within a specified brief period, either issue a license or go to court to seek an injunction against the showing of the film. The Court further found that the total absence of any provision for a prompt final judicial decision by the trial court was violative of the standards of Freedman v. State of Maryland, supra. Under the revised ordinance now before the Court, by way of contrast, no more than 12 days may elapse during the entire administrative process, and a final judicial determina-

---

1. The inferior federal courts which are created pursuant to Article III of the United States Constitution, are limited in the exercise of judicial power, to actual "cases" and "controversies."

tion must follow within eight days thereafter at the most, exclusive of actual trial time. This Court is of the opinion that the new ordinance has sufficiently accelerated the censorship procedures and that General Order No. 3–3 of the Circuit Court has adequately assured prompt judicial review, to satisfy the standards set forth in Freedman v. State of Maryland, supra.

■ 2. Plaintiffs further complain of the absence of any provision whatsoever for prompt appellate court review of a trial court finding of obscenity. A similar contention made to the Supreme Court was rejected in a footnote to Interstate Circuit, Inc. v. City of Dallas, 390 U.S. 676, at 690, n. 22, 88 S.Ct. 1298, at 1306, 20 L.Ed.2d 225:

> Appellants also assert that the city ordinance violates the teachings of Freedman v. State of Maryland * * because it does not secure prompt state appellate review. The assurance of a "prompt final judicial decision" (380 U.S. at 59, 85 S.Ct. 734) is made here, we think by the guarantee of. a speedy determination in the trial court.

■ 3. Plaintiffs further complain that the ordinance prohibits the exhibition of motion pictures prior to the time a judicial determination of obscenity is made. Nothing in Freedman v. State of Maryland, supra, indicates that a reasonably short *pendente lite* prohibition of the exhibition of any film is an exercise of state power in contravention of the First and Fourteenth Amendments. If we are to grant the states the right to require advance submission of motion pictures to a censorship board, as Times Film Corp. v. City of Chicago, supra, holds we must, then we must also grant the right to enforce the submission requirement, at least for the shortest period of time compatible with sound administrative and judicial resolution.

■ 4. Section 155–1 of the censorship ordinance exempts accredited universities, colleges, or other educational institutions, churches or museums having a scientific or educational justification for public exhibition of a motion picture, from the requirements of obtaining a permit. Plaintiffs contend that this classification is an unlawful discrimination. To the contrary, the exemption is rationally related to an apparent purpose of the censorship scheme: the prevention of commercial exploitation of obscenity. The exempted institutions are not commercial competitors of plaintiffs. All of plaintiffs' competitors are likewise required to apply for a permit before exhibition of any motion picture in a public place. Furthermore, the Supreme Court has recently found that the circumstances surrounding the dissemination of allegedly obscene material may be used as evidence of the obscenity of the material. Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1965). Obviously the circumstances surrounding the exhibition of a motion picture by the exempted institutions, where a scientific or educational justification exists for the exhibition, would be almost conclusive of the non-obscenity of the film.

■ 5. Similarly, the Court finds that the Chicago censorship ordinance does not irrationally discriminate between individuals on the basis of age. To the contrary, the city has obviously responded to the suggestion of Justice Brennan in Jacobellis v. State of Ohio, 378 U.S. 184, 195, 84 S.Ct. 1676, 1682, 12 L.Ed.2d 793 (1963):

> We recognize the legitimate and indeed exigent interest of States and localities throughout the Nation in preventing the dissemination of material deemed harmful to children * * * State and local authorities might well consider whether their objectives in this area would be better served by laws aimed specifically at preventing distribution of objectionable material to children, rather than at totally prohibiting its dissemination.

The recent Supreme Court decision in Ginsberg v. State of New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195

(1968), where a New York penal law prohibiting distribution of material "harmful to minors" was upheld, is a further indication that the Supreme Court recognizes a legitimate state interest in preventing dissemination to its younger citizens of materials which could not be kept from adults consistently with the First Amendment. Chicago's selection of age 18 as the cut-off point cannot be said to be unreasonable.

6. Plaintiffs complain of the failure of the Chicago ordinance to contain an exception from enforcement where a parent wishes to bring his child to a motion picture which has been denied a permit. The Supreme Court in Ginsberg v. State of New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) recognized two distinct justifications for legislation restricting the availability of obscene and near-obscene materials to minors. First of all, the legislature could properly conclude that parents, teachers, and others responsible for the well-being of children are entitled to the support of laws designed to restrict the dissemination of sex related material harmful to minors. Secondly, the Supreme Court recognized the independent interest of the State in the well-being of its youth. The Court found that it was not irrational for the State of New York to find that exposure of its younger citizens to materials proscribed by the New York statute was an "abuse", which might have prevented their "growth into free and independent well-developed men and citizens." By enacting its censorship ordinance, the City of Chicago has evidently reached a similar conclusion as to "obscene" motion pictures. It is the opinion of this Court that because of the independent interest of the State in the existence of legislation of this type, there is no constitutional requirement that parents must be given the right to override the legislative finding that the materials proscribed are harmful to minors under the age of 18.

7. Plaintiffs attack Section 155–1 of the censorship ordinance on the grounds that a distributor conceivably might be held accountable if an exhibitor shows an obscene motion picture to a person under 18 years of age, without a permit and without the knowledge or consent of the distributor. I shall exercise my discretion not to decide the issue of whether the state courts would or should construe this section to require *scienter* on the part of the distributor in such a hypothetical situation. Resolution of this issue would not be determinative, in view of the severability clause,[2] of the underlying issue here, namely, whether the Chicago ordinance is wholly invalid on its face. Where resolution of an issue by means of a declaratory judgment will not settle the basic controversy between the parties, or materially contribute to a satisfactory adjudication, the federal courts should not entertain the issue, especially where a constitutional question is raised on purely hypothetical facts. See Borchard, Declaratory Judgments, (2d Ed. 1941) 299.

8. Plaintiffs characterize the fees provided for in the censorship ordinance as an abuse of the police power exercisable by the city because "on information and belief" they bear no reasonable relation to the cost of administering the ordinance. Although well pleaded facts must be accepted as true in passing upon a motion to dismiss, facts which are not well pleaded, and which are effectively contradicted by plaintiff's own pleading, need not be accepted at face value. A reading of the very ordinance being attacked by plaintiffs, which is attached to the complaint, shows that the fees, far from being a revenue raising measure, are clearly mini-

---

2. Section 155–7.4 of the Motion Picture Ordinance provides, "If any part, sections, sentence, or clause of this ordinance shall be adjudged void and of no effect, such decision shall not affect the validity of the remaining portion of this ordinance."

mal and reasonably related to the cost of running the film review program.[3] Even the most harmless film, which will presumably be approved at the lowest administrative level without the necessity of administrative review and court proceedings, must be reviewed in its entirety by three to six members of the Film Review Section. The Film Review Section must compose a written recommendation to the Superintendent of Police, who must then issue a written permit. The city must also budget a portion of each permit fee for the cost of enforcement. The fee of $3 per thousand lineal feet of film for an original permit is obviously minimal. The extra charge of $1 per thousand lineal feet for a duplicate permit not only tends to allocate the cost according to the extent to which the material is being disseminated; it also covers the added expense of issuance of duplicate permits.[4]

 9. Plaintiffs further contend that the failure of the Chicago censorship ordinance, to require the Superintendent of Police, the Film Review Section, or the Appeal Board to give reasons for refusal to issue a permit, renders it unconstitutional. It is the opinion of this Court that findings by an administrative censor are not a constitutional requirement. Since Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), it has been clear that only a de novo judicial determination that a motion picture is unprotected by the First Amendment can justify a valid final restraint of a motion picture in advance of exhibition. The judiciary is perfectly capable of making its own determination of whether or not a film falls within the pro-

scribed bounds, especially where the statute simply regulates "obscene" films. A requirement of administrative findings, whether of fact or law, would merely slow down the pre-judicial proceedings, without contributing anything useful to the Court. The role of the preliminary censor under Freedman v. State of Maryland, supra, is not to be viewed as the role of a special master or fact finder; rather, the role of the administrative censor is merely to winnow out the harmless motion pictures, so that *pendente lite* restraint on their dissemination may be made as short as possible.

10. Plaintiffs next contend that the standard "obscene when viewed by children" is so vague that the censors are vested with unfettered discretion to deny permits. Plaintiffs apparently fear that the defendants will enforce the ordinance not only against "obscene" films, but also against films which would be "harmful to minors", in the same sense as that term was defined in a New York statute recently upheld by the Supreme Court in Ginsberg v. State of New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

In *Ginsberg*, a New York penal statute made it unlawful to sell to a minor (defined as a person under 17 years of age) certain types of magazines and pictures (including those depicting nudity) which, taken as a whole, are "harmful to minors." The term "harmful to minors" was given an elaborate definition in the New York statute, in terms quite similar to language used by the Supreme Court in defining obscenity, but emphasizing also the basis of appeal of the material to persons under 17. The Supreme Court upheld a criminal convic-

---

3. Even in the area of First Amendment freedoms, where the state has a limited police power interest in maintaining some form of regulation, there is no constitutional objection to a reasonable license fee to cover the cost of administration, Cox v. State of New Hampshire, 312 U.S. 569, 576–577, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

4. Furthermore, although the ordinance is not entirely clear on this point, it would appear that the Film Review Section, which has the duty of "review(ing) in the entirety all motion pictures sought to be exhibited in the City of Chicago", must also inspect the duplicate films for which duplicate permits are sought, in order to determine whether any material has been inserted which would render the "duplicate" obscene.

tion for violation of the statute, holding that the term "harmful to minors", as defined, was not unconstitutionally vague or overbroad; and that certain magazines sold by defendants were "harmful to minors," although not obscene for adult readers. Thus the Supreme Court held that the States may regulate the dissemination to juveniles of, and their access to, materials objectionable as to them, but nonregulable where the audience is adult.

The ordinance before the Court, unlike the New York ordinance, does not define the entire phrase "obscene when viewed by children" in such a manner that it is clear that near-obscene films, as well as "obscene" films, are proscribed. Consequently, serious constitutional questions might be presented if the city were to attempt to censor films under the ordinance which are not "obscene" for all audiences.

■■■■■ This Court today holds only that if the Chicago ordinance is construed as applicable solely to "obscene" films, as that term has been defined in a series of Supreme Court decisions, it is not void for vagueness. "Obscene" has become a word of art, the definition of which has been tortuously but definitively evolved through a long series of Supreme Court decisions.[5] It has been held that a statute prohibiting "obscene" materials provides a reasonably ascer-

tainable standard of guilt, justifying a criminal conviction. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L. Ed.2d 1498 (1957). It has never been held that the standards of definiteness must be even more stringent for prior censorship than for criminal convictions. Accordingly, it is the opinion of this Court that if the Chicago censorship ordinance is applied only to "obscene" materials, the absence of further definition of the word "obscene" in the ordinance does not render it unconstitutionally vague.

■■■■■ The federal courts will sometimes decline the exercise of jurisdiction when asked for a declaratory judgment that a state statute is unconstitutional, especially where the state statute is susceptible to a construction by the state courts that would avoid or modify the constitutional question. Railroad Commission v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Premature adjudication by a single federal judge[6] on the constitutionality of a state statute, which is fairly susceptible to a constitutional construction by the state courts, may create needless friction with state policies.

Since the so-called doctrine of abstention is to be sparingly used, especially in the First Amendment area, cf. Zwickler

---

5. Obscene material is material that deals with sex in a manner appealing to prurient interest, i. e., material having a tendency to excite lustful thoughts. The standard for judging obscenity is whether, to the average person, applying contemporary local community standards, the dominant theme of the material, taken as a whole, appeals to prurient interests. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1956). Where material is designed for a clearly defined deviant sexual group, rather than the public as a whole, the prurient appeal requirement is satisfied if the dominant theme of the material as a whole appeals to the prurient interests of members of that group. Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966).

6. Because of the paralyzing effect on state policy brought about by a federal court injunction against execution of a state statute, Congress has provided the safeguard that most challenges to state statutes on the grounds of repugnance to the United States Constitution be heard and determined by a specially convened court of three judges. 28 U.S.C. § 2281. However, it has been held that challenges to purely "local" statutes or city ordinances do not trigger the requirement of a three judge court. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). Consequently a three judge court was not convened here, notwithstanding the fact that if plaintiffs were granted relief here, a regulatory scheme affecting over 3 million residents of the City of Chicago would be paralyzed.

v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), this Court has not totally rejected the exercise of jurisdiction here, but has ruled on the merits of almost every challenge made by plaintiffs to the censorship ordinance. However, the Court deems it both unnecessary and inappropriate to speculate whether the State courts would give the more expansive interpretation to the ordinance, and if so, whether the ordinance would be constitutional.

First of all, defendants themselves do not read the ordinance as applicable to films which are not obscene for all audiences. Defendants have stated their position that "the same test which was applicable for adults will be used in determining whether a movie is obscene for persons under 18." Consequently, this issue lacks "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). In short, there is no justiciable controversy between the parties as to whether or not the ordinance should be applied to non-obscene films.

Secondly, even if this issue were justiciable, all of the prerequisites for abstention on this issue are present here, cf. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). The ordinance is definitely susceptible to a constitutional narrowing construction. Furthermore, plaintiffs are not relegated to a declaratory judgment action in the state courts in order to obtain a state court construction; the Motion Picture Appeal Board could not possibly obtain an injunction against exhibition of a non-obscene film distributed by plaintiffs, unless the state court were to rule on the question of whether or not the ordinance is applicable to such a film. Such a ruling, as indicated above, must come no more than 20 days after plaintiffs actually apply for a permit on such a film.

Finally, even if I were to speculate on how the state courts would interpret this language, it would not be unreasonable to assume that the state courts would give the narrower reading, since the ordinance was enacted before the Supreme Court indicated, in Ginsberg v. State of New York, supra, that the States could regulate, as to minors, expression which would not be obscene for adult audiences.

For the foregoing reasons, this Court concludes that the plaintiffs are not entitled to the declaratory or injunctive relief sought. As to the two issues which were, for the reasons given, not ruled upon today, the Court specifically finds that the plaintiffs have plain, efficient, and speedy remedies in the state courts, if and when the issues become justiciable. Accordingly, further retention of jurisdiction in this Court is unnecessary.

Motion to dismiss allowed.