Jimmie **BAXTER**, Gary E. Crawford, Birt Waite, William L. Waters, Glenda Ruby and Benjamin Taylor, III

v.

Buford **ELLINGTON**, Individually and as Governor of the State of Tennessee, David Pack, Individually and as the Attorney General of the State of Tennessee, Bernard Waggoner, Individually and as Sheriff of Knox County, Tennessee, Harry Huskisson, Individually and as the Chief of Police of the City of Knoxville, Tennessee, and Arthur T. Whitehead, Individually and as Director of Safety & Security of the University of Tennessee.

Civ. A. No. 6923.

United States District Court, E. D. Tennessee, N. D.

Aug. 13, 1970.

Order Oct. 6, 1970.

Bernard E. Bernstein, Charles D. Susano, Jr., Bernstein, Dougherty & Susano, Knoxville, Tenn., for plaintiff.

Tom Fox, Deputy Atty. Gen., Nashville, Tenn., Louis Woolf, McCampbell, Young, Bartlett & Woolf, J. Anthony Brown, Knox County Law Director, James E. Drinnon, Jr., Asst. Gen. Counsel, John C. Baugh, Gen. Counsel, Knoxville, Tenn., for defendants.

## OPINION

Before PHILLIPS, Chief Circuit Judge, and TAYLOR and WILSON, District Judges.

ROBERT L. TAYLOR, District Judge.

Plaintiffs are student leaders at the University of Tennessee at Knoxville. They seek on their own behalf "and in behalf of other students as well as all other persons who use the facilities of the University of Tennessee at Knoxville" a declaratory judgment and injunctive relief from six statutes with criminal sanctions that allegedly proscribe activities protected by the First and Fourteenth Amendments. Defendants are the Governor of the State and other executive officials responsible for the enforcement of the laws of Tennessee.

During oral argument on the motion to convene a three-judge district court and

issue a preliminary injunction, the parties observed that one of the attacked statutes, Tenn.Code Annot. 39–2805 "Prowling or traveling for purpose of destroying property or intimidating citizens" was held unconstitutional in part, but other parts of the statute were ruled to be valid by application of the doctrine of elision by the decision in the case of Armstrong v. Ellington, 312 F. Supp. 1119 (W.D.Tenn., 1970) and that a second, Tenn.Code Annot. 39–1213 "Disorderly Conduct" was declared unconstitutional on grounds of vagueness and overbreadth, Original Fayette County Civic and Welfare League v. Ellington, 309 F.Supp. 89 (W.D.Tenn., 1970), and re-enacted by the 1970 legislature, c. 581, Pub.Acts of 1970. Plaintiffs subsequently amended their complaint to challenge these statutes as modified.

The motion for a preliminary injunction was denied, and a three-judge court was convened to pass upon the constitutional questions presented. Defendants filed a motion to dismiss and an answer.

At the hearing, arguments were presented on the motion and on the merits. Certain stipulations were made, and exhibits filed. Plaintiffs' capacity as student leaders was acknowledged. Some of the indictments returned under these statutes, not against the named plaintiffs but against members of the purported class that they represent, were exhibited. Defendants agreed to file all indictments returned under these statutes. During the argument plaintiffs' attorney stated that, notwithstanding the complaint, there was no contention that defendants were guilty of bad faith in the enforcement of the challenged statutes.

The complaint reveals that much of the impetus behind this suit arose from a University of Tennessee campus disturbance on January 15, 1970, when twenty-two students and non-students were arrested and indictments were returned under the six statutes against seventeen of the twenty-two. Plaintiffs who were not arrested but who actively participate in campus politics contend that these statutes are invalid on their face because their wording is unduly vague, uncertain and broad. Specifically, they allege:

"* * * The continued application of these unconstitutional statutes has been threatened, and these plaintiffs and other members of their class are fearful of threatened future prosecutions. By virtue of these threatened prosecutions, the rights of the plaintiffs to exercise their freedom of expression, their freedom to assemble, and their freedom to petition for a redress of grievances have been severely curtailed. These statutes abridge the privileges and immunities of the plaintiffs as citizens of the United States and further deny to them equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States. These statutes are being used by the defendants to repress the plaintiffs, to inhibit the exercise of the freedoms guaranteed to them by the Constitution, and to stifle participation by young people in the processes of democracy at the University of Tennessee."

Defendants contend that the complaint should be dismissed because there is no actual controversy between the parties, that plaintiffs' fears are hypothetical and unfounded, and that they seek a mere advisory opinion of the validity of the statutes attacked in disregard of the requirement of Article III of the Constitution and the Declaratory Judgment Statute. 28 U.S.C. § 2201.[1]

---

1. "§ 2201. *Creation of remedy*

"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Cases which have been brought to our attention indicate that the line dividing abstract questions and controversies appropriate for judicial determination is one of degree. In Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), the Supreme Court reversed a declaratory judgment that a statute prohibiting the distribution of political handbills was unconstitutional. No substantial controversy existed because the distributor of the handbills opposed only one person who was not expected to campaign for some time. The Court stated:

> " '[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal issues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field.' United Public Workers of America [C.I.O.] v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947). 'The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)." *Id.*, at 108, 89 S.Ct. at 959.

A three-judge district court refused to issue a declaratory judgment in Mitchell v. Donovan, 300 F.Supp. 1145, vacated on other grounds 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970). The Court found that there was no certainty that the plaintiffs would run candidates in future elections or that the defendants would construe the statute in the same way in the future. Consequently, no present controversy required a ruling on the constitutionality of the challenged statute.

Defendants contend that Columbia Pictures Corp. v. City of Chicago, 288 F. Supp. 284 (N.D.Ill., 1968) supports their position. In that case, seven motion picture distributors asked for a declaration that a newly enacted censorship ordinance was unconstitutional. In holding that the matter had not ripened into a justiciable controversy, the Court stated:

> "Plaintiffs allege nothing more than that they 'desire' to distribute certain unspecified motion pictures in the Chicago area, and that they believe defendants 'intend' to enforce the statutory provisions. Under the circumstances, this matter lacks 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Id.*, at 285.

In a subsequent opinion involving the same parties, sub nom. Universal Film Exchanges, Inc. v. City of Chicago, 288 F.Supp. 286 (N.D.Ill., 1968), the Court was able to find a justiciable controversy when plaintiffs plead an inability to contract with various exhibitors for named films unless they complied with the ordinance. In neither case had plaintiffs been refused a permit by the defendants. Thus very few additional facts were needed to create a justiciable controversy.

In contrast to Columbia Pictures Corp. v. City of Chicago, supra, a three-judge district court reached the merits of a case which did not involve similar economic rights without a discussion of the existence of the case or controversy issue. In Harris v. Younger, 281 F.Supp. 507 (C.D.Cal., 1968), probable jurisdiction noted 393 U.S. 1013, 89 S.Ct. 611, 21 L.Ed.2d 558, reargument ordered 399 U.S. 922, 90 S.Ct. 2227, 26 L.Ed.2d 788 (1970), four plaintiffs attacked California's Criminal Syndicalism Act. One was under indictment for distributing leaf-

lets, two alleged that they felt inhibited in advocating the policy of their political party because of the existence of the statute, and a history teacher alleged that he was uncertain as to whether his normal practice of teaching about revolutionary works would subject him to prosecution. *Id.*, at 509.

■ Plaintiffs have alleged that the statutes under consideration inhibit their freedom of speech and their right to assemble and petition their government for redress of grievances. Considering the allegation that the security forces were the instigators of the campus disturbance, these fears are credible. Furthermore, the right to assemble and petition for redress is perhaps of more importance to students than adult citizens since many of the students lack the ability to influence political processes through traditional means. Adderley v. Florida, 385 U.S. 39, 49–51, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (dissenting opinion). Although the question is not free from doubt, we conclude that a case or controversy exists. Accordingly, defendants' motion to dismiss is denied.

■ Historically, federal courts have displayed a reluctance to interfere with the normal operation of state criminal proceedings. Cf. Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed.2d 1324 (1943) with Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943). However, these courts have generally vindicated First Amendment rights allegedly proscribed by overly broad and vague state statutes. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cameron v. Johnson, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed. 2d 715, id., 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967). Absent special circumstances, such allegations show the irreparable injury necessary to justify extraordinary relief.

■ Counsel for defendants advise that with the possible exception of Tenn. Code Annot. 39–2805 Tennessee courts have not construed any of the challenged statutes. Consequently, there has been no opportunity to narrow or clarify the statutory language by state judicial interpretation. They point out, and we recognize, the friction created by federal intervention in state matters and ask that we defer judgment until the state courts construe these statutes. We understand such abstention to be proper when the state law is uncertain and when the state interpretation may avoid or substantially modify the federal constitutional issues, Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), even in areas involving First Amendment protection. Baggett v. Bullitt, supra, 377 U.S. at 376, n. 13, 84 S.Ct. 1316.

■ Abstention can create inordinate delay. Unduly vague and overbroad statutes have such a "chilling effect" upon freedom of expression that this delay causes irreparable injury and makes abstention improper. An overbroad statute concededly governs activities which a state may properly regulate, but it also regulates many activities which the state may not constitutionally control. Vague statutes are written so imprecisely that one must guess at the meaning of the terms used and how the statute will be applied. Persons desiring to engage in expressive activities are not required to guess what activities are proper, and subject themselves to criminal sanctions if their estimates later prove incorrect. They are not required to act in numerous factual situations to hammer out the shape of the statute. It is our duty to strike the defective statutes, giving expedited relief. This action leaves the state legislature with the task of more precisely defining the regulated conduct. If the statute is subject to a construction which can remedy all the alleged defects in one decision, the need for expedited relief passes, and we may abstain avoiding needless irritation in the federal-

state relationship. Dombrowski v. Pfister, supra, 380 U.S. at 491, 85 S.Ct. 1116.

 If we find abstention to be improper, defendants have asked that we perform "plastic surgery" on these statutes, curing any constitutional ills. We decline that invitation. We are a federal not a state court. Also as a court and not a legislative body, we lack the fact-finding facilities essential for legislative judgment. Any "plastic surgery" we perform may result in perverting the legislative intent.

Tenn.Code Annot. 39–1213 "Disorderly Conduct" enacted in 1961 has not fared well under attacks of vagueness and overbreadth. In Brooks v. Briley, 274 F. Supp. 538 (M.D.Tenn., 1967), a concurring opinion questioned its validity. *Id.*, at 556. In Original Fayette Co. Civic & Welfare League v. Ellington, supra, 309 F.Supp. at 92, a three-judge court held "that this statute is susceptible to no construction which will relieve it of the constitutional infirmities of vagueness and overbreadth." That case was decided on February 9, 1970 and the Governor signed the new statute, 1970 Acts, c. 581, on March 2, 1970. The Amended Statute provides:

> "It shall be unlawful for any person to disturb the peace of others by violent, profane, indecent, offensive, or boisterous conduct or language; or by conduct calculated to provoke violence or a violation of the law."

In pertinent part, the former statute provided:

> "It shall be a misdemeanor for any person to engage in disorderly conduct, which is defined as the use of rude, boisterous, offensive, obscene or blasphemous language in any public place; or to make or to countenance or assist in making any improper noise, disturbance, breach of the peace, or diversion, or to conduct oneself in a disorderly manner, in any place to the annoyance of other persons."

 Defendants assert that the new definition is patterned after the city ordinance approved in Wright v. City of Montgomery, 406 F.2d 867 (C.A.5, 1969), cert. pending, 38 L.W. 3035, and not subject to the infirmities of the old statute. We disagree. In that case the federal court used Alabama state decisions which substantially modified the import of that particular statute. We have no such state interpretation. We must " * * * consider a statute as of the time [our] jurisdiction is invoked, rather than some hypothetical future date." Dombrowski v. Pfister, supra, 380 U.S. at 490, 85 S.Ct. at 1123. The current statute still proscribes "offensive or boisterous conduct or language." This language is overbroad. The word "indecent" may be subject to overbreadth problems. This entire clause of the statute is void for overbreadth.

 Tennessee statutes are severable. Tenn.Code Annot. 1–310. For this reason we must examine the latter part of the statute which declares that

> "It shall be unlawful for any person to disturb the peace of others * * by conduct calculated to provoke violence or a violation of the law."

In Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), a case attacking the Ohio Criminal Syndicalism statute, the Court stated:

> " * * * that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.*, at 447, 89 S.Ct. at 1829 (footnote omitted)

This language appears to show some defect in the portion of the statute quoted above. We believe it proper to abstain from deciding the question. Constitutional infirmities in this clause may be eliminated by a state court construction in one case and allow us to avoid or face substantially modified issues.

 Four of the remaining statutes were enacted by the 1969 legislature and

deal with conduct at schools. Tenn.Code Annot. 39–1215 provides:

"39–1215. *Persons interfering with the normal activities of campus buildings or facilities guilty of trespass— Penalty.*—Any person who enters the campus, buildings, or facilities of a junior college, state university, or public school and is committing, or commits, any act which interferes with, or tends to interfere with, the normal, orderly, peaceful, or efficient conduct of the activities of such campus or facility may be directed by the chief administrative officer, or employee designated by him to maintain order on such campus or facility, to leave such campus, buildings, or facilities. If such person fails to do so, he shall be guilty of trespass, and upon conviction shall be deemed guilty of, and punished as for, a misdemeanor as provided in § 39–105."

In general terms there are three elements in the statutory offense: (1) presence at a school facility; (2) acts interfering, or tending to interfere with normal, orderly, peaceful or efficient conduct of the school facility; and (3) failure to leave the facility when ordered to do so by an administrative official. Apparently, the legislative intent was to endow an official of the university with the power to disperse an unruly crowd or mob before riotous proportions are reached. In that sense the statute is analogous to statutes imposing prior restraints on First Amendment activities without defining the exact dimensions of the restraint. E. g. Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). Little imagination is required to conceive of acts interfering or tending to interfere with the normal, orderly, peaceful or efficient conduct of an educational facility which fall within the protection of the First Amendment. An obvious danger is that the administrator's hostility to the acts committed will influence his decisions. The entire statute is vague and overbroad. Cox v. Louisiana, 379 U.S. 536, 551–552, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Edwards v. South Carolina, 372 U.S. 229, 237–238, 83 S.Ct. 680, 9 L.Ed. 2d 697 (1963).

Tenn.Code Annot. 39–1216 apparently creates two different offenses. The statute is violated:

" * * * If any person, persons, group, or assembly of persons shall go or enter into the campus, buildings, or facilities of a junior college, state university, or public school and shall engage in standing, sitting, kneeling, lying down, or inclining so as to obstruct the ingress or egress of other persons in the use of said campus, buildings or facilities for normal business affairs * * *."

An illegal act is also committed:

" * * * If any person, persons, group, or assembly of persons shall go or enter into the campus, buildings, or facilities of a junior college, state university or public school * * * and shall congregate, assemble, or by groups or formation, whether organized or unorganized, or by any method or manner whatsoever, so as to block or interfere with the customary, normal use of said campus, buildings, or facilities * * *."

We hold that the first offense is sufficiently defined. The acts described are definite. Persons like these plaintiffs should be sufficiently knowledgable to realize when certain activities interfere with the "normal business affairs" of a school. Absolute certainty is not necessary in all legislative enactments. Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

The second offense is more general. Any act, including peaceful assembly, which blocks or interferes with the customary, normal use of a school is unlawful. Plaintiffs contend that persons engaged in constitutionally protected activities could block or interfere with the customary, normal use of the school without any criminal intent. Literally, this proposition appears correct. However, plaintiffs neglect to look

at the entire statute. The more specific provisions of the former portion fleshen out and add definiteness to these words. If plaintiffs' position is correct, state courts may be able to find that these acts should be done willfully or knowingly. We do not find this statute overly broad or vague.

■ Plaintiffs contend that the remaining statutes dealing with conduct at schools arbitrarily classify persons who are not "students or employees of a school" in violation of the Fourteenth Amendment. Tenn.Code Annot. 39–1217 provides:

"39–1217. *Groups entering campuses, buildings or facilities to incite public disturbance or violence guilty of a felony—Penalty.*—Any person, persons, group, or assembly of persons, whether organized or unorganized, who enter the campus, buildings, or facilities of a junior college, state university, or public school to incite *others,*[2] to participate in, aid or assist a public disturbance involving an act or acts of violence by one or more persons who is, or are, part of an assemblage of three (3) or more persons, which act or acts shall constitute a breach of peace or an immediate danger, or which results in, or should reasonably be expected to result in, injury to persons or damage to public or private property, shall be guilty of, and, upon conviction, shall be punished as for, a felony as provided in § 39–104."

Tenn.Code Annot. 39–104 provides that a felony not controlled by a specific penalty shall result in imprisonment for a term of one to ten years.

Tenn.Code Annot. 39–5116 provides:

"39–5116. *Entry on school property to participate in a riot—Penalty.* —Any person who enters on the prop-

erty of any school, and is not a student or employee of that school, to incite, participate in, aid or assist a riot shall be guilty of a felony, and upon conviction shall be sentenced to not less than two (2) nor more than five (5) years in the state penitentiary.

"For the purpose of this section a riot is defined to be a public disturbance involving an act or acts of violence by one or more persons who is or are part of an assemblage of three (3) or more persons, which act or acts shall constitute a breach of the peace or an immediate danger, or shall result in damage or injury to persons or property."

Thus, a non-student or non-employee is subject to minimum term of imprisonment for two years while a student or employee is only subject to a minimum term of imprisonment for one year. Plaintiffs conclude that there is no reasonable difference for this classification. We do not see that this question involves any "chilling effect" upon the freedoms in the First Amendment area. Consequently, we exercise our discretion by deferring judgment on the question until the Tennessee courts resolve the issue. See Zwickler v. Koota, supra.

■ The final challenged statute is Tenn.Code Annot. 39–2805:

"39–2805. *Prowling or traveling for purpose of destroying property or intimidating citizens—Threats or intimidation—Penalty.*—Any person or persons who shall willfully prowl or travel or ride or walk through the country or towns, to the disturbance of the peace or to the alarming of the citizens of any portion of the state, or for the purpose of damaging or destroying property, or for the purpose of intimidating or terrorizing any citizen or citizens of this state, or for the purpose of causing, through

2. Plaintiffs generally concede that the declaratory judgment rendered in Original Fayette County Civic and Welfare League v. Ellington, supra, 309 F.Supp. at 93–94, governs the vagueness and overbreadth phases of this case. They contend that the comma after "others" creates a crime by entry at a school "to incite others." We do not deem this matter proper in the context of a declaratory judgment, but we are not persuaded that a misplaced comma will definitely void the statute.

threats or intimidation or other improper means, any citizen or citizens of this state to do or not to do any lawful thing or to do any unlawful thing, shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than fifty dollars ($50.00) nor more than one hundred dollars ($100), and imprisoned in the county jail for not less than six (6) months nor more than twelve (12) months, said imprisonment to be within the discretion of the judge trying the case."

The case of Armstrong v. Ellington, supra, held part of this statute to be unconstitutional but applied the doctrine of elision in holding other parts to be valid. We are of the opinion that the decision in Armstrong v. Ellington, supra, allows us to refrain from any other consideration of this statute in the present case. As we previously noted, there is some question whether plaintiffs have presented a case or controversy within Article III of the Constitution. We held the in terrorem effect of allegedly vague, uncertain and overbroad statutes on activities protected by the First Amendment made the case proper for a declaratory judgment. The decision in *Armstrong* should end that threat.

 Plaintiffs are entitled to a declaratory judgment to the extent previously indicated. We will not enjoin any proceedings in the state courts instituted before this suit was filed. We are of the opinion that the civil rights statutes, especially 42 U.S.C. § 1983, is not an "expressly authorized" exception to the anti-injunction statute, 28 U.S.C. § 2283. Sexton v. Barry, 233 F. 2d 220 (C.A. 6, 1956); Baines v. City of Danville, 337 F.Supp 579 (C.A. 4, 1964); Original Fayette County Civic and Welfare League v. Ellington, supra, 309 F.Supp. at 96; Armstrong v. Ellington, supra; contra Landry v. Daley, 288 F. Supp. 200, 221–224 (N.D.Ill., 1968). See 38 L.W. 3429–3430. Since we must retain jurisdiction for resolution of those issues which we have deferred to the judgment of state courts, Zwicker

v. Koota, supra, at 389 U.S. 244, n. 4, 88 S.Ct. 391, we will also retain jurisdiction regarding the appropriateness of enjoining proceedings which may be instigated after this suit was filed.

An order will be prepared in accordance with this opinion.

### ORDER

PER CURIAM.

This cause came on for hearing before the three judge District Court, Honorable Harry Phillips, Chief Circuit Judge presiding, Honorable Robert L. Taylor, District Judge, and Honorable Frank W. Wilson, District Judge, and the issues having been duly heard, an opinion was prepared and filed on August 13, 1970, which is incorporated herein by reference. In accordance with the said Opinion,

It is ordered, adjudged and decreed:

1. The Motion to Dismiss the Complaint filed by the defendants asserting that it fails to show the existence of an actual controversy between the parties is not well taken and is accordingly overruled.

2. Tenn.Code Ann. 39–1213 as amended by Chapter 581 of the Public Acts of 1970 has been considered by the Court. The definition portion of the Statute is quoted below:

"It shall be unlawful for any person to disturb the peace of others by violent, profane, indecent, offensive or boisterous conduct or language; or by conduct calculated to provoke violence or a violation of the law."

This definition contains within it a clause which is overbroad and, therefore, unconstitutional. Accordingly, the following language is elided from the Statute:

" * * * by * * * profane, indecent, offensive or boisterous * * * language; * * * "

The portion of the Statute which, therefore, remains is:

"It shall be unlawful for any person to disturb the peace of others by

violent \* \* \* conduct \* \* \* or \* \* \* by conduct calculated to provoke violence or a violation of the law."

3. Tenn.Code Ann. 39–1215 is vague and overbroad and, therefore, declared to be unconstitutional.

4. The following portion of Tenn. Code Ann. 39–1216 is constitutional and the declaratory relief prayed for by the complainants is denied:

"\* \* \* If any person, persons, group, or assembly of persons shall go or enter into the campus, buildings, or facilities of a junior college, state university, or public school, and shall engage in standing, sitting, kneeling, lying down, or inclining so as to obstruct the ingress or egress of other persons in the use of said campus, buildings, or facilities for normal business affairs \* \* \*."

Accordingly, with this interpretation, the Court is of the opinion that the following language of Tenn.Code Ann. 39–1216 is not overly broad or vague:

"\* \* \* If any person, persons, group, or assembly of persons shall go or enter into the campus, buildings, or facilities of a junior college, state university or public school \* \* \* shall congregate, assemble, or by groups or formation, whether organized or unorganized, or by any method or manner whatsoever, so as to block or interfere with the customary, normal use of said campus, buildings, or facilities \* \* \*."

5. The Court will not consider the questions raised by the plaintiffs as to the constitutionality of Tenn.Code Ann. 39–1217 and 39–5116, deferring judgment on these Statutes until the Tennessee courts resolve the issues, and the declaratory relief prayed for by the complainants is hereby denied.

6. Tenn.Code Ann. 39–2805 having been recently construed in Armstrong v. Ellington, D.C., 312 F.Supp. 1119 need not be given any further consideration by this Court.

7. The findings of the Court as contained in the opinion and as specified above are determined to be the declaratory judgment of this Court with reference to the statutes in question.

8. An injunction will not issue to enjoin any proceedings in the state courts instituted before this suit was filed.

9. This Court having deferred judgment on several of the constitutional questions raised by the plaintiffs until the Tennessee courts have an opportunity to resolve the same, as noted in paragraph 5 of this order, jurisdiction will be retained pending a resolution of those issues by the state courts. Since this Court will retain jurisdiction it will also defer judgment of the appropriateness of enjoining proceedings which may be instigated in the future under the statutes that remain in question.

10. All costs of this cause are taxed against the defendants.