Daniel Mark **SIEGEL** et al., Plaintiffs,

v.

**REGENTS OF the UNIVERSITY OF CALIFORNIA** et al., Defendants.

No. 52014.

United States District Court
N. D. California.
Jan. 19, 1970.

Doris Brin Walker, of Treuhaft, Walker & Burnstein, Oakland, Cal., for plaintiffs.

Paul N. Halvonik, American Civil Liberties Union, San Francisco, Cal., amicus curiae.

Thomas J. Cunningham and Milton H. Gordon, Berkeley, Cal., for defendants.

## MEMORANDUM OF DECISION AS AMENDED BY ORDER OF DECEMBER 29, 1969

SWEIGERT, District Judge.

This suit is brought under the Civil Rights Act, 42 U.S.C. § 1983, for injunctive and declaratory relief and for damages.

It is now before the court on plaintiff's motion for convening of a three judge court under 28 U.S.C. §§ 2281 and 2284 and for a preliminary injunction based upon plaintiff's verified complaint, which includes certain exhibits hereinafter referred to.

Also before the court is defendants' counter-motion to dismiss the suit for failure to state a claim.

The facts shown by the record are in substance and effect that plaintiff Siegel is a student enrolled at the School of Law on the Berkeley Campus of the University of California. On May 15, 1969, he was president-elect of the Associated Students, University of California, designated by the Chancellor of the Berkeley Campus as the student government organization at that campus.

As of May 15, 1969, certain real property belonging to defendant The Regents, and situated in the vicinity of the Berkeley Campus, had been forcibly seized and occupied by persons not acting under the control or direction of defendant Regents. On the morning of May 15, 1969, The Regents caused a fence to be erected on the perimeter of said property.

On the same day a rally was held at the noon hour in Sproul Plaza on the Berkeley Campus. Several thousand persons were in attendance. Plaintiff Siegel addressed the rally and concluded his remarks as follows:

"Now, we have not yet decided exactly what we are going to do. But there is some plans, I have a suggestion, let's go down to the Peoples Park, because we are the people. But a couple of things, a couple of points I would like to make. If we are to win this thing, it is because we are making it more costly for the University to put up its fence than it is for them to take down their fence. What we have to do then is maximize the cost to them, minimize the cost to us. So what that means, is people be careful. Don't let those pigs beat the shit out of you, don't let yourselves get arrested on felonies, *go down there and take the park.*" (emphasis added.) (Ex. A, Plaintiff's Complaint).

Immediately thereafter, several thousand persons proceeded from the rally down Telegraph Avenue toward the aforementioned property where they were met by law enforcement officers. Violence ensued resulting in the next few days in one death, numerous injuries and many arrests.

By letter dated May 20, 1969, defendant Shotwell, Coordinator of Facilities and Regulations, advised plaintiff in writing (Ex. B, Plt's Comp.) that he was charged with violating certain specified regulations, copies of which were enclosed, by reason of his actions on May 15, 1969 in urging his audience to "go down there and take the park."

Plaintiff was also advised that a hearing had been set before the Berkeley Campus Committee on Student Conduct for May 29, 1969, and he was asked to state whether or not he would be represented by legal counsel. At plaintiff Siegel's request the hearing was reset for June 5, 1969. Defendants refused an additional postponement.

On May 29, 1969, a preliminary hearing was held by defendant Williams, Dean of Students, at which University counsel and plaintiff and his counsel were present. Plaintiff and his counsel reviewed videotapes and audiotapes taken of plaintiff's speech of May 15, 1969.

The hearing was held on June 5, 1969, before the Berkeley Campus Student Faculty Committee. Plaintiff was rep-

resented by his counsel and presented witnesses. A transcript of the hearing is Exhibit K–1 of Plaintiff's Complaint. After lengthy taking of evidence, the Committee deliberated and ultimately presented its report and recommendations (Ex. L, Plt's Comp.) to defendant Heyns, Chancellor.

The Committee on Student Conduct found and concluded:

"* * * that the action of Mr. Siegel did constitute violations of the University's regulations on the Standard of Conduct by exposing the University and its people to mob formation and its attendant potential consequence of violence. Therefore the Committee as a whole agrees that disciplinary action is warranted." (Plaintiffs' Exhibit L, 13.)

A majority of the Committee also concluded that Siegel:

"* * * knowingly spoke at a rally in reckless disregard of the tense and angry nature of the crowd without regard to the foreseeable consequences. At best, his conduct exhibits inexcusable ignorance of the dangerous circumstances." (Plaintiffs' Exhibit L, 13.)

A majority of the Committee also decided that Siegel:

"* * * by his initiation of the march to the 'Park' through his reckless words, greatly inflamed the situation at Haste and Telegraph by sending a great crowd to join another smaller one which was described in great detail by the defense counsel in such words as 'unruly', 'hostile', 'aggressive', 'undisciplined', 'angry', etc." (Plaintiffs' Exhibit L, 14.)

A majority of the Committee also found that Siegel's:

"* * * reckless choice of words spoken in an angry and highly excited tone, nevertheless, lose significance as an appeal to reason or aggressive persuasion. They become instead part of the instrument of force and violence. Such disorderly and disruptive conduct which endangers the welfare and safety of any members of the campus community *is* a violation of University regulations." (Plaintiffs' Exhibit L, 14.)

The Committee recommended that the Chancellor approve the placing of Siegel on disciplinary probation, including exclusion from participation in all privileges or extracurricular activities and specifically from serving as President of the student government.

By letter dated July 2, 1969 (Ex. N, Plt's Comp.) defendant Williams advised plaintiff of the Chancellor's acceptance of the recommendations of the Committee on Student Conduct and informed Siegel that he was placed on probation for a one-year period, the terms of probation permitting plaintiff the privileges of a student and privileges incidental to his studies, but prohibiting him from holding student government office or engaging in other extracurricular activities.

The preliminary injunction sought by plaintiff would enjoin defendants from imposing any discipline on plaintiff for his speech of May 15, 1969 and would require defendants to restore plaintiff forthwith to full student status with all rights and privileges thereof, including the right to hold and occupy the office of President of the Associated Students.

Plaintiff contends that the University regulations promulgated by the University, an agency of the State of California, are constitutionally invalid in that they are "overbroad" and "vague" restrictions upon the right of free speech protected by the First Amendment.

Upon this ground, plaintiff moves for the convening of a three judge court under 28 U.S.C. §§ 2281 and 2284.

Since the requirement for a three judge court is not applicable unless the court determines that the constitutional issues are substantial, we must first examine the record to make a determination of substantiality.

The regulations under which plaintiff was disciplined and which are attacked

upon constitutional grounds by plaintiff, are as follows:[1]

## SUBSTANTIALITY OF CONSTITUTIONAL CONTENTIONS

■ Although First Amendment rights of expression, applied in the light of the special characteristics of school environment, are available to teachers and students (who, of course, do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate), school officials, nevertheless, have comprehensive authority to prescribe and control, consistently with constitutional safeguards, conduct which intrudes upon the work of the school. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506–507, 89 S.Ct. 733, 21 L.Ed. 2d 731 (1969).

■ It is well settled that even speech or expression, which materially and substantially intrudes upon the work of the school by interfering with the requirements of appropriate discipline in its operation, may be prohibited. *Tinker, supra,* pp. 508–511, 89 S.Ct. 733.

■ Regulations for these purposes, which reasonably set forth what conduct is expected from students, are sufficient and need not be tested by the strict standards applicable to criminal statutes or proceedings. Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969); Jones v. State Bd. of Ed., 279 F.Supp. 190 (N.D.Texas, 1968); General Order of the Judges Re Judicial

---

1. (1) University of California Policies Relating to Students and Student Organizations, Use of University Facilities and Non-Discrimination (March 17, 1969) (See, Complaint Ex. C): Sec. II, Part A, Standard of Conduct, Pars. 3, 4, 7, 10, 12; Sec. III, Part A, Campus Regulations, Par. 1.

Section II, Part A, Standard of Conduct, provides that a student enrolling in the University assumes an obligation to conduct himself in a manner compatible with the University's functions as an educational institution, and that misconduct for which students are subject to discipline falls into the following categories:

Paragraph 3 prohibits obstruction or disruption of administration or other University activities, including its public service functions, or of other authorized activities on University premises.

Paragraph 4 prohibits physical abuse of any person on University owned or controlled property or conduct which threatens or endangers the health or safety of any such person.

Paragraph 7 refers generally to violation of University policies or of campus regulations concerning the use of University facilities. (Note: Berkeley Campus Regulations, Sec. III, infra, prohibits unauthorized uses of University facilities).

Paragraph 10 prohibits disorderly conduct on University owned or controlled property.

Paragraph 12 prohibits conduct which adversely affects the student's suitability as a member of the academic community.

Section III, Part A, Campus Regulations, Par. 1, provides that University facilities shall not be used for the purpose of organizing or carrying out unlawful activity. This item of the charge was for some reason eliminated on 6/3/69. (See, Complaint Ex. 4, p. 5).

(2) Berkeley Campus Regulations, Implementing University-wide Policies, Sec. III–1, Revised 1/2/68, (See, Complaint Ex. D). This regulation prohibits unauthorized uses of University facilities.

(3) Emergency Regulations, Office of the Chancellor, 2/24/69, (See, Complaint, Ex. E). This emergency regulation recites a declaration of the Regents that interim suspension shall be imposed immediately in all cases where there is reasonable cause to believe that during a campus disturbance a student has violated University or campus regulations by acts such as physical violence or threats thereof, wilful destruction of University property, wrongful blocking of access to University facilities or other disruptive activities and, further, the regulation recites a policy of the Regents and of the University, that in the light of an emergency University facilities shall not be used for the purpose of organizing or carrying out unlawful activity. The regulation concludes to the effect that the use or threat of physical force to coerce persons using University ·facilities or engaged in administration or University related activities on campus is a fundamental violation of conditions of membership in an academic community and that any student found to have engaged in such misconduct shall be disciplined.

Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R.D. 133 (W.D.Mo.1968); Buttny v. Smiley, 281 F.Supp. 280 (D. Colo.1968); Due v. Florida A & M Univ., 233 F.Supp. 396 (N.D.Fla.1963). See also, Campus Violence, California State Bar Law Journal, Vol. 44, p. 578 (1969); Norton v. East Tennessee State Univ. Discipline Committee, 6 Cir., 419 F.2d 195 (November 28, 1969).

It will be noted that the regulations in question here are on their face directed, not to speech or mere expression of opinion, but to conduct.

■ There is nothing in these regulations that could be fairly said to have a "chilling effect" upon a student's exercise of First Amendment rights of free speech or expression because of "vagueness" or "overbreadth" or otherwise.

Nor is the record such as to show that the regulations have been applied with that effect as to this particular plaintiff.

The complaint, itself, sets forth the exhortation by plaintiff at the close of his speech to "Go down and take the park" and the circumstances under which those words were uttered. (Complaint, par. 3).

■■ Although the complaint alleges that this exhortation by plaintiff was intended by him as mere rhetoric and not for the purpose of directing a physical seizure of the park [2] the complaint, nevertheless, discloses that plaintiff, President-elect of the Associated Students addressing 2,000 students already aroused over the park situation, told them to "Go down and take the park."

The record also shows that plaintiff has admitted by his own testimony at the hearing (as set forth in the hearing transcript (Complaint Ex. K) and as quoted in the Committee Report (Complaint, Ex. L, p. 12)) that he attempted to make his comments sound militant so he wouldn't be tuned off; that he couldn't say simply "Now stay away from the police" because they would have told him to sit down; that he couldn't say it in those words because a moderate sounding statement "wouldn't have any effect on them, whereas a statement made in their own language would have a modifying effect on them, I hoped." [3]

■ Under the circumstances shown by the record that statement transcends mere expression of opinion and becomes *conduct*—a distinct, affirmative *verbal act*—overt conduct for which plaintiff could be properly called to account under the regulations whatever might be his claim as to his subjective purpose and intent.

■■ Illegal conduct is not protected merely because it is in part initiated,

2. We have well in mind that plaintiff's suit cannot be and should not be, treated as a mere petition for review of the university's proceedings. It is a suit under 42 U.S.C. § 1983 and the allegations of the complaint must be considered as raising new and distinct issues for trial de novo. However, the issue raised by this civil rights complaint is, not whether plaintiff was in fact guilty of violating university rules or any other law, nor whether his subjective intent was, in fact, innocent and therefore, a defense to the charges, nor whether the university hearing board's findings on the evidence before it were correct, but, rather, and only whether the university in charging, trying and disciplining plaintiff under the circumstances shown on the face of the complaint, deprived plaintiff of any federally protected constitutional right.

3. Plaintiff admits that Ex. K, a summary transcript of the hearing proceedings including plaintiff's testimony, is "accurate." (Complaint, Par. Xa, p. 10). Plaintiff alleges (Complaint Par. XIV, p. 12) that the Committee's summarization of the evidence (i. e., Complaint Ex. L) is in many respects incorrect, incomplete and inadequate and that "plaintiff's letter of June 20, 1969 to that effect is plaintiff's Exhibit I." Exhibit I, however, does not question the accuracy of the Committee Report insofar as it quotes the above testimony of plaintiff at the hearing. We consider, therefore, that the above testimony of plaintiff at the hearing is evidentiary matter presented by plaintiff and properly considered for purposes of preliminary injunction.

evidenced or carried out by language. Utterance in a context of violence, involving a clear and present danger, can lose its significance as an appeal to reason and become part of an instrument of force and as such unprotected by the Constitution. Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor, 312 U.S. 287, 293, 61 S.Ct. 552, 85 L.Ed. 836 (1941); Cox v. Louisiana, 379 U.S. 536, 553–555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1964); Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L. Ed. 470 (1919); 16 C.J.S. Constitutional Law § 213(5) (6); see also, People v. Davis, 67 Cal.Rptr. 547, 550, 439 P.2d 651 (Cal. Supreme Court 1968) involving Cal. Penal Code, § 404.6, incitement to riot statute). As stated by Hand, J., in United States v. Dennis, 183 F.2d 201, 207 (2d Cir. 1950) (aff'd 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137): "Nobody doubts that, when the leader of a mob already ripe for riot gives the word to start, his utterance is not protected by the [First] Amendment. It is not difficult to deal with such situations * *."

Obviously, such conduct, according to any reasonable, educational standard, would materially and substantially intrude upon University administration within the meaning of *Tinker, supra.*

Plaintiff also relies largely on Tinker v. Des Moines Independent Community School District, *supra*; Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966), and Dickey v. Alabama State Bd. of Ed., 273 F.Supp. 613 (M.D.Ala.1967).

*Tinker* is clearly distinguishable in its facts and ultimate result in that, as pointed out by the Supreme Court, it involved merely the silent passive wearing of black armbands by the student, a symbolic act, entirely divorced from actual or potentially disruptive conduct and closely akin to pure speech, and, as such, protected by the First Amendment even as to teachers and students.

Burnside v. Byars (wearing of freedom buttons) and Dickey v. Alabama (publishing an off-campus editorial) are likewise clearly distinguishable for substantially similar reasons.

Plaintiff also relies in great part upon Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wis.1968) (still pending on appeal to the 7th Circuit, argued September 10, 1969). In *Soglin* certain students were charged generally with "misconduct" (not based in any particular regulation) for having physically and intentionally blocked ingress and egress at a University building to prevent certain interviews being held in the building and, further, were charged with having in this way violated a particular University regulation allowing assembly and speech only by lawful means which would not disrupt University operations.

The court expressed the view that the general charge of "misconduct" was insufficient to support the disciplinary proceedings but, nevertheless (p. 996), refused to grant injunctive relief on that ground, stating that to do so "[would] leave the University defenseless, so far as its regulation of *conduct* is concerned, would be to permit, and possibly to encourage, a situation in which many values, including the exercise of First Amendment freedoms themselves, might be impaired."

As to the specific speech regulation in question, which is distinguishable from the regulations here in question, the court held that, construed as a prohibitive regulation, it was vague and overbroad as a regulation of expression and enjoined its enforcement.[4]

Plaintiff also cites Scoggin v. Lincoln Univ., 291 F.Supp. 161 (N.D.Mo. 1968) as similar to the pending case. In *Scoggin* the court merely held that

4. This Soglin case was affirmed by the 7th Circuit, 10/24/69, 418 F.2d 163, merely holding that the general charge of "misconduct" (unrelated to any specific rule) was insufficient to support disciplinary proceedings—a situation quite distinguishable from the specific rules on which the charges against plaintiff, Siegel, were based. The court agreed, however, that university codes of conduct are not required to satisfy the same rigorous standards as criminal statutes.

the students, charged with planning an unauthorized demonstration in the University cafeteria and suspended from the University, had not been accorded even minimal procedural due process in the disciplinary proceedings taken against them. The court did not hold that the regulation in question was either vague or overbroad, or that the University lacked power to discipline for the alleged conduct in question. On the contrary, the court recognized (p. 172) that student conduct "violative of a valid rule or regulation of an educational institution does not gain the protection of the First Amendment merely because such conduct is in part initiated, evidenced, or carried out by means of language, either spoken, written or printed."

■ The court concludes that the constitutional issues raised by plaintiff concerning the regulations in question are insubstantial within the meaning of Wicks v. Southern Pacific Company, 231 F.2d 130, 134 (9th Cir. 1956), and that no three judge court is required.

PRELIMINARY INJUNCTION—MOTION TO DISMISS

■ Apart from the claimed unconstitutionality of the regulations, plaintiff's only other claim is that the disciplinary proceedings taken against him were such as to deprive him of procedural due process of law.

The allegations and exhibits of plaintiff's complaint set forth facts sufficient to foreclose any such contention. The charge against plaintiff was adequately proferred in writing; reasonable time was granted prior to the hearing; plaintiff was represented by his attorney, called his own witnesses, and was given opportunity to confront and cross-examine witnesses and to argue his cause through his attorney before a tribunal of his own choice.

Just how much more "due process" could have been accorded plaintiff is hard to imagine. The record discloses that there is absolutely no merit to plaintiff's contention to the contrary.

CONCLUSION AND ORDER

For the foregoing reasons we conclude that the record does not present even a prima facie showing that plaintiff has been deprived of any constitutional right under color of California State law or regulations within the meaning of the Civil Rights Act, Title 42 U.S.C. § 1983.

Accordingly, plaintiff's motion for a preliminary injunction should be and is hereby denied, and defendants' motion to dismiss the action should be and is hereby granted upon the ground that the complaint, considered as a whole and with the exhibits attached thereto, fails to state a claim upon which relief could be granted in this action.