525 P.2d 903

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Larry SILVA, Juan Manuel Soliz, Ramon Soliz, Charles Richard McCurdy, Sylvia Maria Larez, Michael Peter Garcia, Pete Schuler, Mary Meza, Carlos Anaya, Israel Dominguez, Louis Cordova, and Frank Sanchez, Defendants-Appellants.**

**No. 1181.**

Court of Appeals of New Mexico.

July 17, 1974.

Certiorari Denied Aug. 16, 1974.

**544**

Paul A. Phillips, Albuquerque, for defendants-appellants.

David L. Norvell, Atty. Gen., Prentis Reid Griffith, Jr., Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendants were tried de novo in district court on an appeal from a conviction in magistrate court for violation of § 40A–20–10. N.M.S.A.1953 (Repl.Vol.1972). See § 36–15–1 through § 36–15–4, N.M.S.A.1953 (Repl.Vol.1972); § 36–21–42, N.M.S.A.1953 (Repl.Vol.1972); Southern Union Gas Company v. Taylor, 82 N.M. 670, 486 P.2d 606 (1971). They now appeal the judgment of the district court, affirming the magistrate court's decision. Four isses are presented for reversal: (1) Delegation of Judicial Power; (2) Vagueness; (3) Overbreadth; and, (4) Unconstitutional Statute Application. We affirm.

The case arose from an incident on the campus of Eastern New Mexico University on April 11, 1972. On that morning the twelve defendants, mostly students, attended the regular meeting of the Administrative Council of the University to discuss additional funding for the Ethnic Studies Program. The meeting was held at 9:00 a.m. in the office of Dr. Meister, the University President, and Chairman of the Council. At approximately 10:30 a.m. Dr. Meister opened the discussion on the Ethnic Studies Program funding. At 11:15 a.m. he determined that the proceeding " . . . was getting to be . . . possibly disorderly . . . ", and terminated the discussion. The defendants

would not leave. The Council members then moved to another office to dispose of further business. At 12:00 p.m. Dr. Meister received word that the defendants were still in his office. He and the Council members then reconvened in his office to talk further with the defendants. Because of the luncheon appointments of several Council members Dr. Meister adjourned the meeting at 12:10 p.m. He then told the students he would need his office at 1:30 p.m. for other business and they must leave. At 1:30 p.m. Dr. Meister returned from lunch for an appointment with Dr. Shannon to discuss a faculty personnel matter, followed at 2:00 p.m. by another appointment. The defendants had not left. He again requested they do so. When they did not leave he and the University attorney read § 40A–20–10, supra, to the defendants. He told the attorney that the defendants were disrupting his normal business. The defendants were then arrested by police. The arrests were without violence.

Section 40A–20–10, supra, states:

"40A–20–10. *Interference with members of staff, faculty or students of institutions of higher education — Trespass — Damage to property — Misdemeanors — Penalties.*— A. No person shall on the campus of any community college, junior college, college or university in this state, hereinafter referred to as 'institutions of higher education' or at or in any building or other facility owned, operated or controlled by the governing board of any institution of higher education, willfully deny to students, school officials, employees and invitees:

"(1) lawful freedom of movement on the campus;

"(2) lawful use of the property, facilities or parts of any institution of higher education; or

"(3) the right of lawful ingress and egress to the institution's physical facilities.

"B.   No person shall on the campus of any institution of higher education, or at or in any building or other facility owned, operated or controlled by the governing board of any institution; willfully impede the staff or faculty of the institution in the lawful performance of their duties, or willfully impede a student of the institution in the lawful pursuit of his educational activities, through the use of restraint, abduction, coercion or intimidation or when force and violence are present or threatened.

"C.   No person shall willfully refuse or fail to leave the property of, or any building or other facility owned, operated or controlled by the governing board of any institution of higher education upon being requested to do so by the chief administrative officer or his designee charged with maintaining order on the campus and in its facilities or a dean of a college or university, if the person is committing, threatens to commit or incites others to commit any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions of the institution.

"D.   Nothing in this section shall be construed to prevent lawful assembly and peaceful and orderly petition for the redress of grievances, including any labor dispute between an institution of higher education and its employees or any contractor or subcontractor or any employee thereof.

"E.   Any person who violates any of the provisions of this section shall be deemed guilty of a petty misdemeanor and upon conviction thereof shall be punished by a fine not to exceed one hundred dollars ($100) or imprisoned in the county jail for a period not to exceed six [6] months or by both the fine and imprisonment."

Defendants were charged and found guilty of violation of § 40A–20–10, supra, without specification of any subsection. Nonetheless, they have standing to only challenge the constitutionality of subsection C, particularly since they raise First Amendment issues.   Compare State v. Marchiondo, 85 N.M. 627, 515 P.2d 146 (Ct.App.1973); see Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

1.   *Delegation of Judicial Power.*

■   Defendants claim State v. Jaramillo, 83 N.M. 800, 498 P.2d 687 (Ct.App. 1972) controls this case.   We disagree. *Jaramillo,* invalidated a statute conditioning criminality on a finding by a state custodian that a state building was ". . . being used or occupied contrary to its intended or customary use. . . ." The court held that allowing criminal liability to turn on this essentially adjudicative determination without more adequate standards was unconstitutional.   See N.M.Const. Art. III, § 1.

As our Supreme Court stated in Huey v. Lente, 85 N.M. 597, 514 P.2d 1093 (1973):

". . . if a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality. . . ."

By interpreting § 40A–20–10, supra, consistent with this rule we find the legislature avoided the problem which arose in *Jaramillo* by specifying adequate standards and guidelines to be followed.   Criminality is based first on a refusal to leave after requests by the chief administrative officer and second on a determination that the person ". . . is committing, threatens to commit or incites others to commit any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions of the institution."   The second determination is not made by the requesting officer but the trier of fact.   City Commission of Albuquerque v. State, 75 N.M. 438, 405 P.2d 924 (1965).   As it is with all criminal statutes, the determination is preliminarily made by the arresting officer under statutory standards.   Thus, regardless of how unreasonable the request of the administra-

tive officer may be no criminal liability attaches until a judge or jury determines that the person committed the disrupting act. In *Jaramillo* it was the custodian who determined criminal liability. No matter how unreasonable his request, once it was made the judge or jury had to convict.

### 2. *Vagueness.*

Any statute which forbids or requires the doing of an act in terms ". . . so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application . . .", violates due process. Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); State v. Marchiondo, supra. Defendants claim subsection C of § 40A–20–10, supra, suffers from this vice. Moreover, they assert the statute ". . . abut[s] upon sensitive areas of basic First Amendment freedoms, . . ." and its vagueness, therefore, ". . . operates to inhibit the exercise of [those] freedoms." Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Defendants challenge in particular the words ". . . disrupt, impair, interfere with or obstruct. . . . ."

In Grayned v. City of Rockford, supra, a similar statute, applicable in similar circumstances, was upheld. That statute proscribed ". . . the making of any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof." The court concluded:

> "We do not have here a vague, general 'breach of the peace' ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school."

Compare Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) and Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Numerous courts have upheld terms similar to those questioned here, particularly when applied in the school context. State v. Wiggins, 272 N.C. 147, 158 S.E.2d 37 (1967), cert. denied, 390 U.S. 1028, 88 S.Ct. 1418, 20 L.Ed.2d 285 (1968) ("interrupt", "disturb"); State v. Sullivan, 189 Neb. 465, 203 N.W.2d 169 (1973) ("obstruct", "unreasonably interfere"); People v. Witzkowski, 53 Ill.2d 216, 290 N.E.2d 236 (1972), appeal dismissed, 411 U.S. 961, 93 S.Ct. 2162, 36 L.Ed.2d 682 (1973) ("interfere"); McAlpine v. Reese, 309 F. Supp. 136 (E.D.Mich.1970) ("disturbance"); Dougherty v. Walker, 349 F.Supp. 629 (W.D.Mo.1972) ("interference"); Baxter v. Ellington, 318 F.Supp. 1079 (E.D. Tenn.1970) ("obstruct", "block or interfere with the customary, normal use of said campus"); People v. Del Toro, 155 Colo. 487, 395 P.2d 357 (1964) ("interfere"); Landry v. Daley, 280 F.Supp. 938 (N.D.Ill.1968), appeal dismissed in Landry v. Boyle, 393 U.S. 220, 89 S.Ct. 455, 21 L.Ed.2d 392 (1968), reversed on other grounds in Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971) ("resists or obstructs"); Powers v. McCullough, 258 Iowa 738, 140 N.W.2d 378 (1966) ("hinder or deter"); also see Sill v. Pennsylvania State University, 318 F.Supp. 608 (M.D.Pa.1970), affirmed, 462 F.2d 463 (3rd Cir. 1972) ("unreasonably interferes with hinders, obstructs, prevents"); Furumoto v. Lyman, 362 F.Supp. 1267 (N.D.Cal.1973) ("prevent or disrupt", "obstruct"); Siegel v. Regents of University of California, 308 F.Supp. 832 (N.D.Cal. 1970), vacated on the substantiality of the federal question, 449 F.2d 788 (9th Cir. 1971) ("obstruction or disruption").

All contrary cases were decided prior to Grayned v. City of Rockford, supra. See Corporation of Haverford College v. Reeher, 329 F.Supp. 1196 (E.D.Pa.1971); Soglin v. Kauffman, 295 F.Supp. 978 (W.D. Wis.1968), affirmed, 418 F.2d 163 (7th Cir. 1969); Baxter v. Ellington, supra. *Grayned* severely limits their persuasive power to the extent they apply to the present case.

The term "impair" in the present statute borders on uncertainty. However, the other operative verbs give it sufficient clarity. See Baxter v. Ellington, supra. It means, in context, a substantial physical diminution or damage and not just any diminution in quality. Likewise, the other words objected to—"disrupt . . . interfere with . . . obstruct" when read together lend certainty to each other and more precisely delineate the reach of the statute.

The intent requirement also increases the statute's certainty. See Grayned v. City of Rockford, supra. Not only must the refusal be willful (see § 40A–20–10(C)) but the disruption must also be accompanied by general intent. See State v. Shedoudy, 45 N.M. 516, 118 P.2d 280 (1941); State v. Puga, 85 N.M. 204, 510 P.2d 1075 (Ct.App. 1973).

Finally, this statute does not put unbridled discretion in the hands of the administrator or police officer. Compare Coates v. Cincinnati, supra. Each decision is checked by the decision of another. The administrator's request is checked by the determination of the arresting officer that the person's acts disrupted the University. The officer cannot arrest until the administrator makes the request. The discretion of both is limited by the reasonably precise directive of the statute.

Section 40A–20–10(C), supra, allows control of campus disturbances in terms marked by "flexibility and reasonable breadth, rather than meticulous specificity." Esteban v. Central Missouri State College, 415 F.2d 1077 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L. Ed.2d 548 (1970). The statute " '. . . defines boundaries sufficiently distinct' for citizens, policemen, juries, and appellate judges." Grayned v. City of Rockford, supra. It is not void for vagueness.

### 3. *Overbreadth.*

When a statute draws within its prohibitory ambit conduct protected by the First and Fourteenth Amendments it is void for overbreadth. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Where, as here, the statute vindicates the significant government interest in the control of campus disturbances, reasonable "time, place and manner" regulations are valid even though they incidentally suppress otherwise protected conduct. Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396 (1941).

We begin analysis with Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). That case defined the limits of First Amendment protection in the school enviroment. It reaffirmed the importance of the school as the market place for the robust exchange of ideas. But it also recognized the need for discipline in schools and the need for limiting expression which invades the rights of others. It drew the line between these conflicting interests at the point where "substantial disruption of or material interference with school activities" takes place.

Grayned v. City of Rockford, supra, upheld, as consistent with that standard, a statute proscribing ". . . any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof. . . . " The opinion acknowledges that the statute prohibits conduct "that is neither violent nor physically obstructive." Normal conversational speech in an unobstructive or undisruptive situation may yet disturb. Nevertheless, the court approved its reach as applied in the school context. The present statute is not so broad. Its operative verbs (disrupt, impair (as construed), interfere with, obstruct), read as a whole, denote a more substantial, more physical invasion.

The *Grayned* statute applies when merely the peace of the school session is disturbed. Conduct which does not interfere with the functioning of the school may nonetheless disturb its peace. The present statute, however, requires interference with the actual functioning of the University. "[M]ission, processes, procedures or func-

tions . . . ", when read together, mean nothing less. Again, it is more narrowly drawn.

We can say of the present statute, more forcefully than did the *Grayned* court of the statute attacked there, that it ". . . punishes only conduct which disrupts . . . normal school activities. That decision is made, as it should be, on an individualized basis, given the particular fact situation. Peaceful picketing which does not interfere with the ordinary functioning of the school is permitted. And the ordinance gives no license to punish anyone because of what he is saying." Grayned v. City of Rockford, supra; also see Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Cameron v. Johnson, supra; McAlpine v. Reese, supra; State v. Sullivan, supra; People v. Witzkowski, supra; Sill v. Pennsylvania State University, supra; Dougherty v. Walker, supra; Furumoto v. Lyman, supra.

The statute is valid on its face.

### 4. *Unconstitutional Statute Application.*

■ Defendants assert that regardless of the statute's facial validity it was unconstitutionally applied. We disagree. Our benchmark is, again, the rule in *Tinker*. We review the facts de novo. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, 95 A.L.R.2d 1412 (1964).

The defendants pressed legitimate demands in an unobstructive way during the Administrative Council meeting. That conduct was protected. However, when their demands were not met they added coercive conduct to their protected speech and their constitutional protection ended. They refused to honor Dr. Meister's request to leave his office. He allowed them to remain through lunch, when he had no other business, but he had appointments in the afternoon. By refusing to leave when Dr. Meister returned from lunch the defendants substantially interfered in the functioning of the president's business. They argue that the president was too hasty and could have moved his meeting else-

where. There are three answers to that argument: First, he had no way of knowing how long they would stay or how many appointments they would disrupt. Second, the same argument can be made for conduct manifestly unprotected, like the occupation of buildings to the exclusion of students and faculty. Third, "[i]t may be, as has been suggested, that in these cases of nonviolent violation, there is 'sense in patient forbearance despite the wrong that the action involves.' Patient forbearance, however, is the result of a prudential judgment and is not constitutionally compelled." Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027 (1969).

*Tinker* does not compel a contrary conclusion. That case ". . . involve[d] direct, primary First Amendment rights akin to 'pure speech'."

We hold the defendants' conduct was unprotected.

The judgment is affirmed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.