GORSUCH, Circuit Judge,
dissenting.
If a seventh grader starts trading fake burps for laughs in gym class, what’s a teacher to do? Order extra laps? Detention? A trip to the principal’s office? Maybe. But then again, maybe that’s too old school. Maybe today you call a police officer. And maybe today the officer decides that, instead of just escorting the now compliant thirteen year old to the principal’s office, an arrest would be a better idea. So out come the handcuffs and off goes the child to juvenile detention. My colleagues suggest the law permits exactly this option and they offer ninety-four pages explaining why they think that’s so. Respectfully, I remain unpersuaded.
The simple fact is the New Mexico Court of Appeals long ago alerted law enforcement that the statutory language on which the officer relied for the arrest in this case does not criminalize “noise[s] or diversion[s]” that merely “disturb the peace or good order” of individual classes. State v. Silva, 86 N.M. 543, 525 P.2d 903, 907 (N.M. Ct. App. 1974). Instead, the court explained, the law requires “a more substantial, more physical invasion” of the school’s operations — -proof that the student more “substantially interfered” with the “actual functioning” of the school. Id. at 907-08. What’s more, other state courts have interpreted similar statutes similarly. They’ve sustained criminal convictions for students who created substantial disorders across an entire school. See, e.g., State v. Wiggins, 272 N.C. 147, 158 S.E.2d 37, 42-44 (1967); State v. Midgett, 8 N.C.App. 230, 174 S.E.2d 124, 127-28 (1970). But they’ve also refused to hold students criminally liable for classroom antics that “momentarily divertfed] attention from the planned classroom activity” and “require[d] some intervention by a school official.” In re Jason W., 378 Md. 596, 837 A.2d 168, 174 (2003). Even when the antics *1170 required a teacher to leave her class for several minutes, In re Brown, 150 N.C.App. 127, 562 S.E.2d 583, 586 (2002), or otherwise “divert[ed] the teacher or the principal from other duties for a time,” P.J.B. v. State, 999 So.2d 581, 587 (Ala. Crim. App. 2008) (per curiam). See also, e.g., S.L. v. State, 96 So.3d 1080, 1083-84 (Fla. Dist. Ct. App. 2012). Respectfully, I would have thought this authority sufficient to alert any reasonable officer in this case that arresting a now compliant class clown for burping was going a step too far.
In response, my colleagues suggest that Silva is distinguishable because it interpreted not the state statute addressing misconduct in public schools on which the officer here relied, see N.M. Stat. Ann § 30-20-13(D), but another statute dealing with protests at colleges, see N.M. Stat. Ann. § 40A-20-10(C) (1972). And that much is true enough. But the unobscurable fact remains that the relevant language of the two statutes is identical — requiring the government to prove that the defendant “commit[ed] any act which would disrupt, impair, interfere with or obstruct the lawful mission, processes, procedures or functions” of a school. Silva expressly held that this language does not criminalize conduct that disturbs “merely the peace of the school session” but instead requires proof that the defendant more substantially or materially “interfere[d] with the actual functioning” of the school. 525 P.2d at 907. Neither do my colleagues offer any reason why a reasonable officer could have thought this same language carried an entirely different meaning when applied to public school burps rather than college sit-ins — and the parties supply none. Cf. Smith v. City of Jackson, 544 U.S. 228, 233, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (“[W]hen Congress uses the same language in two statutes having similar purposes, ... it is appropriate to presume that Congress intended that text to have the same meaning in both statutes”).
My colleagues likewise dismiss the authority from other states interpreting similar statutes similarly. Maj. Op. at 1149-50. But again it’s hard to see why. After all, these cases draw the same distinction suggested by Silva — between childish pranks and more seriously disruptive behaviors— and hold that only the latter are prohibited by statutes like the one before us today. And they draw that distinction, too, because disciplining children who temporarily distract classmates and interrupt lessons “is simply part of [traditional] school activity” and part of its “lawful mission ... or function[ ].” In re Jason W., 837 A.2d at 174; see also In re Brown, 562 S.E.2d at 585-86. Given that, I would have thought these cases would have only reinforced the lesson Silva already taught reasonable officers in New Mexico. See Wilson v. Layne, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (noting law may be clearly established if there is “a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful”).
Often enough the law can be “a ass — a idiot,” Charles Dickens, Oliver Twist 520 (Dodd, Mead & Co. 1941) (1838) — and there is little we judges can do about it, for it is (or should be) emphatically our job to apply, not rewrite, the law enacted by the people’s representatives. Indeed, a judge who likes every result he reaches is very likely a bad judge, reaching for results he prefers rather than those the law compels. So it is I admire my colleagues today, for no doubt they reach a result they dislike but believe the law demands — and in that I see the best of our profession and much to admire. It’s only that, in this particular case, I don’t believe the law happens to be quite as much of a ass as they do. I respectfully dissent.